FILED

2005 Nov-16  PM 03:21
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHN HENDRIX,                         )
                                      )
              Plaintiff,              )
                                      )        CASE NO.:
v.                                    )
                                      )        CV-03-RRA-2919-S
MILER WIRE WORKS, INC.,               )
                                      )
              Defendant.              )

## MEMORANDUM OF OPINION

## I.    INTRODUCTION

This is a civil action filed by the Plaintiff, John Hendrix, against the Defendant, Miller

Wire Works, Inc., for violations of the Family Medical Leave Act of 1993 (the "FMLA").  In

particular, the Plaintiff claims that the Defendant failed to provide him benefits, failed to

inform him of his rights, and interfered with his rights to return to work, all in violation of

the FMLA.

The case is currently before the Court on the Renewed Motion for Summary Judgment

filed by the Defendant.  (Doc. 25).  For the reasons stated herein, the motion will be denied.

## II.   STANDARD OF REVIEW

In conducting [a summary judgment analysis], [the Court must] view all
evidence and factual inferences in the light most favorable to the nonmoving
party. *Id.* Summary judgment is proper where "there is no genuine issue as to
any material fact" and "the moving party is entitled to a judgment as a matter
of law." Fed.R.Civ.P. 56(c). However, "the mere existence of *some* alleged
factual dispute between the parties will not defeat an otherwise properly
supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only
factual disputes that are material under the substantive law governing the case
will preclude entry of summary judgment. *Id.*

*Lofton v. Secretary of Dept. of Children and Family Services,* 358 F.3d 804, 809 (11th Cir. 2004).

III.    FACTS[1]

In September of 2003, the Plaintiff, John Hendrix, was an employee of Miller Wire Works and became hospitalized on September 1 due to a heart attack.  He received an angioplasty and was discharged from the hospital on September 5, 2003.  Hendrix's hospitalization was timely reported to Miller Wire Works on September 1, 2003.  The Plaintiff was discharged from the hospital on September 5 and on that day took his discharge papers to Miller Wire Works.

Sheila Horton, bookkeeper and receptionist at Miller Wire Works, told the plaintiff that he would need a written statement from his doctor showing when he could come back to work.  He understood that he needed this statement showing when he could come back to work.  The plaintiff obtained a statement from his doctor and brought it to Miller Wire Works and gave it to Bari Graham who works in the bookkeeping department.  The statement provided was a written statement from his doctor dated September 11, 2003, which states that Hendrix would not be able to return to work until after he was examined on September 29, 2003.

On September 30, 2003, the plaintiff, John Hendrix, called his supervisor, Jimmy Horton, and reported he had been released to return to work but would need to be on light duty.  Mr. Horton, on behalf of Miller Wire Works, told John Hendrix that he would not

---

[1]The facts are cast, as they must be, *in the light most favorable to the non-movant.*

be able to return to work with a light duty restriction without a statement from his doctor showing these restrictions.  According to Hendrix, the specific conversation was as follows:

A.    Yes, sir, I told him the doctor told me to come back and try if I felt like it.

Q.    I see.

A.    He told me did I have anything in writing stating that the doctor said that and I had told him no and he told me, well, you're going to have to bring something saying that he said you can come back to work.

Q.    Okay.

A.    And I had told him, I said okay, but right now I'm sick and when I can get back over there and get one, I'll bring it to you.

Q.    When did you tell Mr. Horton you were sick?

A.    The same day I talked to him on the 30th.

*Hendrix Deposition*, at 15-16.  Mr. Horton says that the Plaintiff said he would return to work the next day–October 1, 2003.  *Horton Affidavit*, at 2.  The Plaintiff says that he never said that he would return to work the next day.  *Hendrix Affidavit*, at 2.

After the Plaintiff called his supervisor on September 30, 2003, reporting that he had been released to return to light duty, he made no further contact with his employer until fourteen days later when he went to Miller Wire Works on October 14, 2003. The plaintiff wanted to discuss why he had received a letter, dated October 8, 2004, informing him of his COBRA rights and, in effect, that he had been fired. After meeting with Ms. Battles, Hendrix met with Mr. Horton.  Mr. Horton, like Ms. Battles, told Mr. Hendrix he was fired because no one had heard from him.[2]  It is company policy of Miller Wire Works to require any light

---

[2]Hendrix got a doctor's excuse for light duty on October 6, 2003.  He never provided that excuse or any other doctor's excuse showing restriction for light duty to Miller Wire Works.

3

duty restriction to be supported by a physician's statement. *Battles Affidavit*, at 2. It is also company policy to terminate an employee after he has failed to return to work for two days or to call in. *Id.* at 2.

After Hendrix was terminated and after this suit was filed on October 29, 2003, Battles noted on the monthly billing statement from Baltimore Life that Mr. Hendrix had been terminated. Baltimore Life provides disability insurance and the Plaintiff paid premiums from payroll deductions for this coverage. Mr. Hendrix paid no premiums in October for this insurance. Since the Plaintiff paid no premiums for October, Baltimore Life stopped its coverage effective the first day of October. Baltimore Life sent its letter of November 15, 2003, to Hendrix notifying him that his policy was cancelled effective October 1, 2003. He had paid no premiums beyond his September deductions. His health insurance, however, continued through the month of October, 2003. *Id.*

IV.    ANALYSIS

The company has a policy of terminating an employee who does not show up or report in after two days. No one has argued that this policy is in violation of law. Only its application in this particular case is in dispute.

During their September 30, 2003, phone conversation, Mr. Horton says that the Plaintiff said he would return to work the next day–October1, 2003. *Horton Affidavit*, at 2. The Plaintiff says that he never said that he would return to work the next day. *Hendrix Affidavit*, at 2. The Plaintiff's deposition testimony does not establish that the Plaintiff was told to return to work, or volunteered to return to work on a certain day. The Defendant has offered no evidence that it *required* the Plaintiff to return to work on a certain day, only that

4

the Plaintiff *volunteered* to come in on October 1, 2003.  The evidence when viewed in the light most favorable to the Plaintiff, rebuts that contention.

A reasonable jury could determine that Horton required that before the Plaintiff could return to work he had to get his doctor to put in writing that presently the plaintiff could return to light-duty work only.  This conversation occurred on September 30. The plaintiff stated that he would comply with Horton's request, with this qualification: "but right now I'm sick and when I can get back over [to my doctor] and get one, I'll bring it to you." When the defendant did not hear from the plaintiff, he was effectively notified that he was fired in the October 8 letter.

The plaintiff was sick when he spoke to Horton on September 30. The nature of the plaintiff's sickness, however, is not known. Neither is it known whether its severity prevented the plaintiff from immediately returning even to light-duty work, and, if it did, when the plaintiff became well enough, if he did become well enough before he was fired, to perform light-duty work.  If it is found that the plaintiff was able to get the doctor's statement, and able to perform light-duty work, at least two days before the defendant terminated his employment, and that instead the plaintiff chose not to go to the trouble of getting the doctor's statement or just chose to "lay out," termination might have been proper and the plaintiff consequently loses his benefits. What the truth is on these matters, however, cannot be determined on this summary judgment motion. It also remains to be seen whether the plaintiff's verison of the disputed conversation will be believed.

The defendant's motion for summary judgment is due to be **DENIED**. An appropriate order will be entered.

**DONE** this 16th day of November, 2005.

ROBERT R. ARMSTRONG, JR.
UNITED STATES MAGISTRATE JUDGE